UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| JOE EVANS, JR. | CIVIL ACTION NO. 3:14CV1035 |
| VERSUS | JUDGE JAMES |
| M.L. SMITH, JR., L.L.C. | MAGISTRATE JUDGE HAYES |

<u>REPORT AND RECOMMENDATION</u>

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion for partial dismissal for failure to state a claim upon which relief can be granted, [doc. # 6], filed by Defendant M.L. Smith Jr., L.L.C. Plaintiff opposes the Motion. [doc. # 8]. For reasons assigned below, it is recommended that the Motion be **GRANTED IN PART AND DENIED IN PART**.

<u>**Background**</u>

Plaintiff, Joe Evans, Jr., filed the instant Petition on April 16, 2014, in the 3rd Judicial District Court, Parish of Lincoln, Louisiana. [doc. # 1-2].[1] Plaintiff applied for a full-time Welder's Helper position with Defendant on May 31, 2012. *Id.* at 2. Although there were no Welder's Helper positions presently available, Defendant promised Plaintiff that he would "provide [Plaintiff] with the first opportunity to fill the position." *Id.* In the meantime, Defendant offered Plaintiff a Floor-Sweeper position at a rate of $9.45/hour. *Id.* at 3. Defendant promised to give Plaintiff a raise if, after working for thirty days, Plaintiff received a satisfactory performance evaluation. *Id.* As a result of Defendant's promises, Plaintiff delayed his impending graduation from welding school, accepted Defendant's offer, and began working on

---

[1] The following two paragraphs comprise the Court's summation of Plaintiff's relevant allegations.

June 4, 2012. *Id.*

On June 12, 2012, Plaintiff received his first paycheck and realized that Defendant paid him only $8.00/hour. *Id.* Defendant informed Plaintiff that it would increase his pay rate after his scheduled performance review; however, Plaintiff eventually received a favorable review yet Defendant refused to increase his pay as promised. *Id.* In January of 2013, Defendant promoted Plaintiff to the Welder's Helper position. *Id.* at 4. However, Defendant still refused to increase Plaintiff's compensation. *Id.* Subsequently, after Plaintiff frequently questioned his supervisor about his pay rate, Defendant demoted Plaintiff back to the Floor Sweeper position. *Id.* Defendant terminated Plaintiff's employment on May 29, 2013. *Id.* at 5.

In the instant Petition, Plaintiff claims, *inter alia*, that Defendant acted with malice and reckless indifference, violated Title VII of the Civil Rights Act of 1964, breached its contract with Plaintiff, and caused Plaintiff to detrimentally rely on its promises. *Id.* at 5-7. As a result, Plaintiff prays for the following: "back and front pay, lost benefits, mental anguish, humiliation and embarrassment, loss of reputation, loss of enjoyment of life, foreseeable and unforeseeable damages, compensatory damages, punitive damages, pre-judgment interest, attorney's fees, and all costs of [the instant] proceedings." *Id.* at 7-8.

Defendant timely removed the proceeding to this Court on the basis of federal question jurisdiction on May 22, 2014. [doc. # 1]. Defendant argues that Plaintiff's Title VII claims should be dismissed because they are untimely. [doc. # 6-1, p. 1]. Defendant argues that Plaintiff's breach of contract and detrimental reliance claims should be dismissed because they "stem solely from the termination of [Plaintiff's] employment at-will." *Id.* Defendant explains: "[A]s an at-will employee, [Plaintiff] cannot recover damages merely because he was terminated.

2

Indeed, he could be terminated at any time—with or without cause." *Id.* Defendant also raises a new issue in its Reply and argues that, to the extent that Plaintiff's claims can be construed as tort claims, they should be dismissed because they have prescribed. [doc. # 16, p. 8].

The matter is now before the Court.

## **Law and Analysis**

The Federal Rules of Civil Procedure sanction dismissal when the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility does not equate to possibility or probability; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556.

In deciding whether the complaint states a valid claim for relief, a court accepts all well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly, supra*. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

**I. Plaintiff's Title VII Claims**

Initially, Defendant argued that Plaintiff's Title VII claims should be dismissed because Plaintiff failed to file suit within ninety days after he received a right-to-sue notice from the EEOC. [doc. # 6-1, p. 4]. However, Defendant has subsequently withdrawn this challenge and concedes that Plaintiff fax-filed his Petition within the requisite time period. [doc. # 16, p. 1]. Defendant's Motion should be **DENIED** accordingly.

**II. Plaintiff's Breach of Contract Claim**

Plaintiff alleges that Defendant's "above described actions . . . constitute breaches of Defendant's implied duty to perform its contractual obligations in good faith." [doc. # 1-2, p. 6]. Presumably, by referring to Defendant's "above described actions," Plaintiff claims that Defendant violated its implied duty by failing to compensate and promote Plaintiff in accordance with the terms of its offer. Defendant, in the instant Motion, sets forth several arguments in

4

opposition.

A. Whether Plaintiff's Claim Arises Out of Plaintiff's Termination

Defendant first argues that this claim should be dismissed because, "[w]here the employment relationship is at will, there can be no breach of contract claim arising from the termination of that relationship."  [doc. # 6-1, p. 5].  Defendant essentially contends that Plaintiff is not suing because Defendant breached the terms of the agreement, he is suing because his employment ended before Defendant could fulfill its promises.  [doc. # 16, p. 5].

Plaintiff, in response, argues that Defendant misconstrues his claim.  [doc. # 8, p. 7]. Plaintiff explains: "[Plaintiff] never alleges his termination as the grounds for Defendant's breach of contract.  Instead, [Plaintiff] pleads that Defendant failed to compensate and promote him in compliance with the representations and enforceable obligations Defendant made and assumed when [Plaintiff] was hired." *Id.* at 7-8.  Simply put, Plaintiff contends that the doctrine of employment-at-will is inapplicable because Defendant breached the terms of the employment contract prior to terminating Plaintiff.

Plaintiff's argument is well-taken.  Plaintiff's breach of contract claim does not arise out of his termination; rather, Plaintiff alleges that Defendant breached its obligation to compensate and promote Plaintiff prior to termination.  To explain, Plaintiff first alleges that Defendant offered to pay him $9.45/hour and offered to give him a raise if he received a satisfactory performance review.  [doc. # 1-2, p. 3].  Plaintiff then alleges that, prior to termination, Defendant paid Plaintiff only $8.00/hour and failed to increase Plaintiff's pay despite the fact that he received a satisfactory performance review.  *Id.*

Plaintiff next claims that Defendant offered him the first opportunity to fill the next

5

available Worker's Helper position. *Id.* at 2. Plaintiff goes on to allege that, again prior to termination, Defendant gave "the first opportunity to fill the position" to other applicants. *Id.* at 5. Defendant did promote Plaintiff to the Welder's Helper position prior to hiring other candidates, but Plaintiff explains that the promotion was a sham because Defendant failed to increase his pay and would not allow him to take the necessary certification test. *Id.* at 4. Subsequently, Defendant demoted Plaintiff and hired other individuals to fill the Welder's Helper position. *Id.* at 4-5. Thus, Defendant provided other individuals the first true opportunity to fill the position.

In short, as Plaintiff puts it, his "claims were mature and ripe at the time he received his first paycheck and at the instant Defendant hired another candidate for the Welder's Helper position." [doc. # 8, p. 10]. *See Wagner v. Schlumberger Well Surveying Corp.*, 1997 WL 218209, at *2 (E.D. La. April 30, 1997) (holding that the plaintiff's breach of contract claim was premised on the employer's failure to compensate and failure to promote the employee to a full-time position, not on any claim for improper dismissal).

B. <u>Whether a Terminable-At-Will Employment Agreement is Enforceable</u>

Defendant next argues that even if the claim does not arise from Plaintiff's termination it should nevertheless be dismissed because Plaintiff's at-will status renders the entire employment contract unenforceable. [doc. # 16, p. 2]. Defendant essentially equates terminability with unenforceability. The Court finds this argument unavailing.

There are two types of employment agreements: the limited duration contract and the terminable-at-will contract. *Read v. Willwoods Cmty.*, 140 So. 3d 807, 813 (La. App. 5 Cir. 2014). A limited duration contract is an agreement to be bound for a certain length of time

during which the employer is not free to dismiss the employee without assigning a reason for doing so. *Id.* In contrast, an at-will contract has an indefinite duration.[2] *Bains v. Young Men's Christian Ass'n of Greater New Orleans*, 969 So. 2d 646, 651 (La. App. 4 Cir. 2007). In that regard, "A contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and form, to the other party." LA. CIV. CODE. ART. 2024.

Aside from that, the Court finds that there is no other relevant reason for distinguishing between the two types of contracts. The holding in *Porbeck v. Indus. Chem. (US) Ltd.*, 134 So. 3d 234 (La. App. 3 Cir. 2014), buttresses this conclusion. There, an employee claimed that his employer breached an employment agreement by failing to pay him the money owed under a severance package. *Id.* The employer argued that the terms of the agreement were not enforceable because the employee was an at-will employee. *Id.* at 237. The court disagreed with the employer and held, "We further find no merit in [the employer's] argument that [the employee's] status as an 'at-will' employee rendered the employment contract invalid." *Id.* at 242.

To be sure, however, Defendant points to two cases which, at first glance, appear to contradict the Court's finding. Defendant first cites to *Mayes v. Office Depot, Inc.*, 292 F. Supp. 2d 878 (W.D. La. 2003). [doc. # 16, p. 2-3]. Citing *Brannan v. Wyeth Labs., Inc.*, 526 So. 2d 1101, 1104 (La. 1988), the *Mayes* court held that "[a]n employment contract for an indefinite period of time is not enforceable under Louisiana law, as the contract can be terminated at the will of either the employee or the employer. *Mayes*, 292 F.3d at 895. Stated differently, the

---

[2] Plaintiff admits that he "did not enter into any employment contract with Defendant which specified a term of employment." [doc. # 8, p. 8].

court held that because either party can terminate an employment contract for an indefinite period of time, the entire contract is unenforceable. *Id.*

With respect, however, the Court finds that the *Brannan* holding is not so broad. In *Brennan*, the plaintiff claimed that his employer wrongfully terminated him in breach of his employment contract. *Brannan,* 526 So. 2d at 1102-03. The court first cited LA. CIV. CODE ART. 2024, which, to reiterate, states that "[a] contract of unspecified duration may be terminated at the will of either party . . . ." *Id.* at 1103. The court then observed that "a contract for longer than the time provided in art. 167, which is presently ten years, is void." *Id.* at 1104 (citation omitted). Turning to the case before it, the court found that "[t]he present case involves a situation in which, even if the relationship between the parties could be construed as constituting an oral contract of employment, the ten year term provided for in art. 167 has run, and the contract is terminable at will." *Id.* The court went on to find, in the alternative, that defendant established just cause for plaintiff's termination. *Id.* The court never held that a terminable-at-will contract is wholly unenforceable.

Defendant also points to *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 517 (5th Cir. 1994), which cited to *Brannan* for the proposition that, "Unless the employment contract is for a definite period of time, there is no enforceable action for damages under Louisiana law, as the contract can be terminated at the will of either the employee or the employer." *Id.* However, unlike in *Mayes*, the *Deus* court cited *Brannan* only in connection with its examination of the plaintiff's wrongful termination claim; in other words, the court was referring only to an action for damages arising out of an employee's termination. In fact, the court went on to examine, in detail, the plaintiff's third breach of contract claim and made no mention of any absolute bar on the

enforcement of a contract for an indefinite period of time. *Id.* at 518-19.

Based on the foregoing, the Court rejects Defendant's argument and finds that the relevant distinction between a limited duration contract and a terminable-at-will contract lies only in the limits placed on an employer's ability to terminate an employee; aside from terminability, the obligations in both types of contracts are equally enforceable.

C. Whether Plaintiff States a Claim for Breach of the Duty of Good Faith

Finally, Defendant maintains that Plaintiff fails to state a claim for bad faith breach of contract because Plaintiff "fails to identify a contractual obligation between the parties that would impose a duty of good faith . . . ." [doc. # 6-1, p. 6]. In Louisiana, all contracts must be performed in good faith. LA. CIV. CODE ART. 1759, 1983. However, "Louisiana does not recognize a separate and distinct obligation of good faith, the breach of which would be equivalent to a breach of the contract between the parties." *Gulf Coast Bank and Trust Co. v. Warren*, 125 So. 3d 1211, 1219 (La. App. 4 Cir. 2013). Rather, courts in Louisiana will only examine a party's good or bad faith if they find that the party has failed to perform an obligation. *Favrot v. Favrot*, 68 So. 3d 1099, 1109 (La. App. 4 Cir. 2011). "Thus, judicial determination of good-faith (or bad-faith) failure to perform a conventional obligation is always preceded by a finding that there was a failure to perform, or a breach of contract." *Id.* at 1110. Courts will then determine the extent of the obligee's damages "according to whether the obligor failed to perform in good faith or in bad faith." *Id.*

Here, contrary to Defendant's assertions, Plaintiff does allege that Defendant's breach of the duty of good faith arose from its breach of three underlying contractual obligations. Plaintiff claims that Defendant violated the duty of good faith via the "above described actions . . . ."

9

[doc. # 1-2, p. 6]. Prior to that allegation, Plaintiff alleges that Defendant offered to give Plaintiff the first opportunity to fill the Welder's Helper position, to pay Plaintiff $9.45/hour, and to give Plaintiff a raise if he received a satisfactory performance evaluation. *Id.* at 2-3. Plaintiff then alleges that Defendant breached these obligations by offering the first opportunity to fill the position to another individual, by paying Plaintiff $8.00/hour, and by failing to give Plaintiff a raise after he received a satisfactory rating. *Id.* 3-5. On the whole, while Plaintiff's reference to the "above described actions" is certainly not a model of precision, it does amount to a plausible claim for relief when construed in his favor.

Accordingly, Defendant's Motion, with respect to Plaintiff's breach of contract claim, should be **DENIED**.

## III. Plaintiff's Detrimental Reliance Claim

Plaintiff claims, apparently in the alternative,[3] that he detrimentally relied on Defendant's promises and suffered damages as a result. [doc. # 1-2, p. 6-7]. He argues specifically: "Defendant, through its representatives, promised [him] that if he accepted the Floor Sweeper position Defendant would provide him with future job opportunities and pay increases. As a result of Defendant's promises, [Plaintiff] accepted the entry level position and delayed his graduation from welding school from December 2013 to May 2014." *Id.* at 7. Plaintiff adds that he justifiably relied on Defendant's promises and that Defendant knew he would rely on the promises. *Id.*

Defendant argues that "Louisiana does not recognize detrimental reliance claims within

---

[3] The doctrine of detrimental reliance "usually functions when no written contract or an unenforceable contract exists between the parties." *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 (5th Cir. 2004).

the context of at-will employment." [doc. # 6-1, p. 6]. Defendant explains, "Plaintiff cannot allege that he reasonably relied upon the 'promises' made by [Defendant] because, as a matter of law, it is unreasonable to rely upon continued employment in an at-will employment relationship." *Id.* at 8. In response, Plaintiff contends that, like the claim above, Defendant has misconstrued this claim "by assuming that it too is based upon [Plaintiff's] termination." [doc. #8, p. 11].

Article 1967 of Louisiana's Civil Code provides, "A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying." LA. CIV. CODE ANN. art. 1967. A Plaintiff must prove three elements by a preponderance of the evidence in order to establish a claim: "(1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to ones detriment because of the reliance." *Butler v. Sudderth*, 784 So. 2d 125, 131 (La. Ct. App. 2001) (citing *John Bailey Contractor, Inc. v. State*, 439 So. 2d 1055, 1059 (La. 1983)).

Here, Plaintiff has alleged all three of these elements. He specifically alleges that Defendant promised him the first opportunity to fill the Welder's Helper position, promised to pay him $9.45/hour, and promised to give him a raise if he received a satisfactory evaluation. [doc. # 1-2, p. 2-3]. Plaintiff then alleges that he reasonably relied on these promises when he delayed his graduation. *Id.* at 7.

Despite those allegations, however, the pertinent question remains: whether, as a matter of law, an employee can reasonably rely on promises that are implicitly conditioned upon continued employment. In *May v. Harris Mgmt. Corp.*, 928 So. 2d 140, 148 (La. App. 1 Cir.

2005), the court held that "it is patently unreasonable for an employee to rely on an offer of at-will employment," and noted that "an employee who resigns one job for other at-will employment, does so at her peril." As another example, the court in *Stevenson v. Lavalco, Inc.*, 669 So. 2d 608, 612 (La. App. 2 Cir. 1996), held that "any claimed reliance on representations that the employment would be permanent or corresponding changes in position thereon are misplaced," because "[i]nherent in the 'at will' nature of the employment agreement [is] the possibility that the employment may be terminated at any time, without any cause." *See also Onovwerosuoke v. Dillard Univ.*, 2009 WL 8684635, at *2 (La. App. 4 Cir. Jan. 14, 2009) (holding that an employee's alleged reliance on his employment with his employer was not reasonable because he was an at-will employee and could be fired at any time).

On one hand, those cases are distinguishable because they involved detrimental reliance claims that arose out of employers' wrongful terminations or refusals to hire. As discussed above in Section II, Plaintiff's claim does not arise out of his termination, it arises out of distinct promises that Defendant failed to fulfill prior to termination. In addition, Plaintiff does not allege that he expected continued or permanent employment, he alleges that he expected to be compensated and promoted according to Defendant's promises. On the other hand, however, Defendant's promises to promote Plaintiff, to give Plaintiff a raise, and to compensate Plaintiff at a certain rate were all inherently conditioned upon continued employment. As Defendant puts it, "Plaintiff's reliance on a promotion or wage increase before his termination is implicitly an expectation of continued employment that is inconsistent with Louisiana law." [doc. # 16, p. 6]. *Id.*

Thus, as a matter of law, Plaintiff could not reasonably rely on Defendant's promises

because they were dependent upon continued employment with Defendant. In that regard, Plaintiff acknowledges that he was an at-will employment and that, consequently, Defendant could terminate him before its promises accrued.[4]  Accordingly, Defendant's Motion, with respect to Plaintiff's detrimental reliance claim, should be **GRANTED**.

**IV. Plaintiff's Ostensible Tort Claims**

Defendant raises an argument in its Reply that it did not raise in its original Motion. Defendant argues, "Although plaintiff alleges that a contract existed, the claims also sound in tort under La. C.C. art. 2315 because Plaintiff has alleged that [Defendant's] actions were undertaken 'with malice and/or reckless indifference to [Defendant's] state and federally protected rights' and because Plaintiff seeks damages, *inter alia* for ' . . . mental anguish, humiliation and embarrassment, loss of reputation, [and] loss of enjoyment of life . . . .'" [doc. # 16, p. 8]. Defendant contends that any ostensible tort claims have prescribed because "such claims are subject to the one year prescriptive period set forth in La. C.C. art. 3492." *Id.* at 9. Defendant contends further, "it is undisputed that the petition in this matter was filed over a year after [Plaintiff's] termination and the alleged harm . . . ." *Id.*

Ordinarily, the Court declines to consider new arguments raised in a defendant's reply brief because the "scope of the reply brief must be limited to addressing the arguments raised by the [response]." *Staton Holdings, Inc., v. First Data Corp.*, 2005 WL 2219249, at *4 (N.D. Tex. Sept. 9, 2005). However, Defendant's argument is easily disposed of.

---

[4] Plaintiff argues that *Bains*, 969 So. 2d at 646, held that an at-will employee can assert a detrimental reliance claim under Louisiana law. [doc. # 8, p. 12]. The court there, however, only held that an at-will employee may have a cause of action against an employer if the employer terminates the employee in bad faith. *Bains*, 969 So. 2d at 652. Here, Plaintiff's cause of action does not arise out his termination.

First, it is manifest that Plaintiff filed the Petition less than one year after Defendant terminated his employment. Defendant terminated Plaintiff "[o]n or about May 29, 2013." [doc. # 1-2, p. 5]. Plaintiff filed the instant Petition on April 16, 2014. *Id.* at 2. Second, it is not clear, from the face of the Petition, that Plaintiff's alleged harm occurred more than one year before Plaintiff filed suit. Plaintiff does not assign a date to his claim that Defendant failed to give him the first opportunity to fill the Welder's Helper position, and the remaining claims—i.e. that Defendant inadequately compensated Plaintiff on multiple occasions—could constitute continuing torts that accrued only when the underlying conduct causing the damage ended. *See Hogg v. Chevron USA, Inc.*, 45 So. 3d 1991, 1005 (La. 2010) (observing that cases addressing the continuing tort doctrine all "looked to the alleged injury-producing conduct of the tortfeasors to determine whether that conduct was perpetuated through overt, persistent, and ongoing acts."). Accordingly, Defendant's Motion, with respect to its argument that Plaintiff's claims have prescribed, should be **DENIED**.

## Conclusion

For the reasons stated above,

**IT IS RECOMMENDED** that the Motion to Dismiss, [doc. # 6], filed by Defendant M.L. Smith, Jr., L.L.C. be **GRANTED IN PART** and that Plaintiff's detrimental reliance claim be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that the Motion to Dismiss, [doc. # 6], be otherwise **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have **fourteen (14) days** from service of this Report and Recommendation

to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, Monroe, Louisiana, this 5th day of August, 2014.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE